**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Diane Nutting,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-20-01319-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Deborah Diane Nutting's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 21, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 22, "Def. Br."), and Plaintiff's Reply Brief (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now affirms the Administrative Law Judge's decision (R. at 13–23) as upheld by the Appeals Council (R. at 1–3).

**I.     BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on October 15, 2015, for a period of disability beginning on September 1, 2015. (R. at 13.) Her claim was denied initially on February 4, 2016, and upon reconsideration on November 17, 2016. (R. at 13.) Plaintiff appeared before the ALJ for a hearing regarding her claim on December 11, 2018,

which the ALJ denied on June 25, 2019. (R. at 13, 23.) On May 5, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: obesity; essential hypertension; hypothyroidism; idiopathic, peripheral neuropathy; intermittent vertigo; a history of left ankle fracture, status post-surgical repair; and cervical, thoracic, and lumbar degenerative disc disease. (R. at 16.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 22.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 17.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except in an 8 hour work day with normal breaks, she can occasionally lift/carry up to 50 pounds and frequently up to 25 pounds. [Plaintiff] can stand/walk for a total of about 6 hours and sit for a total of about 6 hours. She can frequently climb ramps/stairs and occasionally ladders/ropes/scaffolds. Further, [Plaintiff] can frequently stoop, balance, kneel, crouch, and crawl.

(R. at 18.) Accordingly, the ALJ found that Plaintiff can perform past relevant work as a paraprofessional/teacher's aide. (R. at 22.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   ANALYSIS

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues the ALJ erred in assigning little weight to her treating physician, Dr. Mark Whitaker's medical opinion. (Pl. Br. at 11–16.) Next, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 16–24.)

First, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for assigning little weight to Dr. Whitaker's medical opinion. Second, the Court finds the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. For the following reasons, the Court affirms.

### A.   Medical Opinion

Plaintiff argues the ALJ erred in assigning little weight to the opinions of Dr. Whitaker. (Pl. Br. at 11–16.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see also Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ assigned Dr. Whitaker's medical opinion little weight because Dr. Whitaker's described limitations were more restrictive than Plaintiff's own description of her abilities. (R. at 21, 282–91.) The ALJ explained that Dr. Whitaker opined Plaintiff required a cane for ambulation, she would be off task 11-15% of the workday, and she would have difficulty maintaining substantial gainful employment. (R. at 21.) The ALJ pointed out that in May 2019, Dr. Whitaker opined that Plaintiff had difficulty climbing stairs, prolonged sitting or standing, and walking significant distances. (R. at 21, 920.) In May 2019, Dr. Whitaker indicated again that Plaintiff required a cane for ambulating and that she would be unable to engage in substantial gainful employment. (R. at 21, 920.) The ALJ found that Dr. Whitaker's opinions were not supported by the medical evidence, including Dr. Whitaker's own findings. (R. at 21.) The ALJ explained that Dr. Whitaker routinely saw Plaintiff for manipulations and medication refills and that he did not recommend specialized care for Plaintiff. (R. at 21, 910–18, 921–41.) The ALJ also noted that Dr. Whitaker's examinations were typically unremarkable, and that when presented with an opportunity to provide detail on a checkbox form, Dr. Whitaker did not provide explanation for his assertions. (R. at 21.)

Plaintiff argues the ALJ erred in assigning little weight to Dr. Whitaker's medical opinion because Dr. Whitaker explained his treatment approach and Plaintiff's inability to take narcotic pain medication for her chronic pain. (Pl. Br. at 13, 716.) Plaintiff also contends the ALJ was mistaken in indicating Dr. Whitaker did not recommend specialized care for Plaintiff's impairments when Dr. Whitaker ordered physical therapy on three occasions. (Pl. Br. at 13–14; R. at 21.) But the ALJ also goes into greater detail regarding Plaintiff's treatment and does not reject Dr. Whitaker's opinion solely because Plaintiff did not take narcotics. The ALJ describes that Dr. Whitaker's treatment included medications and physical therapy that he prescribed three times. (R. at 21, 913, 917, 937.) The ALJ reasonably found that these were conservative steps taken to address Plaintiff's pain and limitations.

Plaintiff also argues the ALJ erred in finding Dr. Whitaker's examinations showed Plaintiff's symptoms were unremarkable when Dr. Whitaker observed Plaintiff had tenderness in her left elbow, decreased motion in her feet and ankles and lumbar and thoracic spine, tenderness in her spine, mild osteoarthritic hypertrophy in her knees, muscle spasms in her back, and pain in her back indicated by her straight leg raises. (Pl. Br. at 14; R. at 21, 516, 621, 715, 745, 767, 771, 795 801, 806, 816–17, 912, 924.) But the record shows consistently that Plaintiff had normal strength, intact sensation and reflexes, normal gait, and normal coordination. (R. at 395, 399, 419, 516, 519, 523, 527, 532, 545, 571, 575, 583, 587–88, 635, 715, 718, 723, 727, 732, 736, 741, 762, 771, 776, 781, 795, 801, 817.) Plaintiff also consistently denied back pain, joint swelling, dizziness, tremors, weakness, numbness, fatigue, or gait problems. (R. at 19, 459, 503, 507, 558, 562, 566, 591.) The evidence supports the ALJ's finding that Plaintiff's symptoms were often documented as unremarkable.

Plaintiff also contends the ALJ erred in rejecting Dr. Whitaker's opinion because it was, in part, conveyed in a check box form. (Pl. Br. at 1; R. at 21.) Defendant points out that Dr. Whitaker conducted an examination the same day that he completed the September 12, 2018 checkbox questionnaire, and that in the examination, Dr. Whitaker noted Plaintiff had normal strength, no sensory deficits, normal coordination, and normal gait. (Def. Br. at 10; R. at 914–15, 917.) But the check box questionnaire shows extreme limitations, including Plaintiff could only lift up to five pounds occasionally and Plaintiff could only stand for two hours a day. (R. at 605.) Dr. Whitaker did not provide an explanation for the contradictions. Additionally, Dr. Whitaker was Plaintiff's treating physician for a period of time and the check box questionnaire was not the only reason the ALJ provided in assigning little weight to Dr. Whitaker's opinion. Even if the ALJ improperly relied on the use of a check box questionnaire to discount Dr. Whitaker's medical opinion, the ALJ provided several other sufficient reasons.

Finally, Plaintiff argues the ALJ erred by indicating that Dr. Whitaker's opinion was more restrictive than Plaintiff's admitted abilities. (Pl. Br. at 15; R. at 21.) Plaintiff argues

Dr. Whitaker's opinion was consistent with her abilities. For example, Plaintiff could do a few chores and then had to sit down for a while. (Pl. Br. at 15; R. at 283.) Plaintiff argues this is consistent with Plaintiff's self-report that sitting, standing, or walking too much causes pain. (Pl. Br. at 15; R. at 285.) Plaintiff indicated she could prepare meals for thirty minutes to an hour which was consistent with Dr. Whitaker's assessment that she could stand or walk for 15 to 20 minutes at a time for up to two hours in an eight-hour workday. (Pl. Br. at 15–16; R. at 605, 617.) However, Dr. Whitaker also indicated Plaintiff could not do sedentary work, but Plaintiff cares for her dogs, manages her own hygiene, prepares meals, does household chores, runs errands, drives, manages her finances, attends church, and exercises. (R. at 20, 283–87, 605–07, 617–19, 643, 819, 871, 885, 887, 890, 895, 900, 905.) The ALJ provided specific and legitimate reasons supported by substantial evidence in finding Dr. Whitaker's medical opinion was more restrictive than Plaintiff's admitted abilities. The Court finds the ALJ did not err and provided sufficient evidence in assigning little weight to Dr. Whitaker's medical opinion.

### B.  Symptom Testimony

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 16–24.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based

solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 18–19.) The ALJ described how Plaintiff's medical evidence and activities of daily living ("ADLs") conflicted with her symptom testimony. (R. at 19–20.)

First, the ALJ opined that "objective findings, diagnostic studies, treatment modalities, and treatment record on the whole illustrate [Plaintiff's] limitations are not debilitating." (R. at 19.) A January 2016 x-ray shows moderate disc space narrowing and a thoracic x-ray in November 2017 showed moderate multilevel degenerative changes. (R. at 19, 416, 623.) Plaintiff had no additional MRIs, NCS, or EMGs. (R. at 19.) In physical examinations, Plaintiff had normal strength, gait, and coordination; intact sensation and reflexes; negative straight leg raises, and diffuse paravertebral spam in the cervical, thoracic, and lumbar spine with decreased range of motion. (R. at 19, 395, 399, 419, 516, 519, 523, 527, 532, 545, 571, 575, 583, 587–88, 621, 635, 715, 718, 723, 727, 732, 736, 741, 745, 762, 767, 771, 776, 781, 795, 801, 806, 816–17, 912, 924.)

The ALJ also considered that Plaintiff alleged debilitating pain, but all her symptoms were managed by a family practitioner. (R. at 19.) For example, Plaintiff complained of inner ear problems, but Plaintiff never had a formal evaluation. (R. at 19, 843–44.) Plaintiff also improved with physical therapy and at home exercises, and the ALJ noted that it does not appear specialized treatment was recommended or needed. (R. at 19.) The ALJ also pointed out that Plaintiff did not want to see an orthopedist for her pain because she did not want surgical intervention. (R. at 19, 923.) The ALJ explained that Plaintiff's pain generally improved with physical therapy, manipulation, and myofascial release. (R. at 19, 819–908, 910–19, 921–41.) The medical record also showed that Plaintiff

had relief from pain with ice or a topical analgesic and that she had fairly good control of hypertension with medication. (R. at 19, 508, 819, 830, 928.)

The ALJ also explained that Plaintiff offered differing complaints to her treating providers in her allegations of her pains in filing for disability. (R. at 19.) Plaintiff occasionally reported radiations to her lower right extremity to providers but denied radicular symptoms from her spine disorder. (R. at 19, 911, 936.) The ALJ also pointed out that Plaintiff denied back pain, joint swelling, dizziness, tremors, weakness, numbness, fatigue, or gait problems. (R. at 19, 459, 503, 507, 558, 562, 566, 591.) Plaintiff also indicated that though she had low back pain when sitting, her pain improved with movement and standing. (R. at 19, 635.)

Additionally, the ALJ opined that Plaintiff's ankle fracture injury was not as severe as Plaintiff alleged. (R. at 19–20.) Plaintiff sustained an ankle fracture in 2009 and had an open reduction and internal fixation, and two years later, in 2011, two of the screws were removed. (R. at 19, 481.) A January 2016 examination showed no significant bone or joint abnormalities. (R. at 19, 416.) In 2019, an examination showed the screws were just below the skin surface causing "some discomfort" and Plaintiff occasionally had swelling in her left ankle. (R. at 19–20, 911–19, 928.) But Plaintiff did not want to surgically remove the screws and there were no additional abnormalities. (R. at 20, 928.)

The ALJ also described that Plaintiff indicated she needs an assistive device for ambulating, but no medical evidence supports this. (R. at 20.) Plaintiff used a cane at physical therapy, and she reported having "frequent falls" or almost falling. (R. at 20, 819, 911, 936.) But the ALJ pointed out that Plaintiff consistently had normal gait and coordination and full strength in the lower extremities. (R. at 20, 395, 399, 419, 516, 519, 523, 527, 532, 545, 571, 575, 583, 587–88, 635, 715, 718, 723, 727, 732, 736, 741, 762, 771, 776, 781, 795, 801, 817.) Additionally, the record shows only two occasions where Plaintiff fell, in November 2016 and November 2017. (R. at 20, 620–23, 625–26.)

Last, in considering the medical evidence, the AJ found that Plaintiff's obesity was not an impairment that would preclude work activities. (R. at 20.) Plaintiff is 5'2" and

weighs 166 to 200 pounds, which equals a body mass index of 30.51 to 35.44, which the National Institute of Health describes as obese. (R. at 20, 557–58, 561–62, 565–66, 569–70, 573–74, 577–78, 581–82, 586, 590–91, 599–600.) The ALJ opined that Plaintiff's obesity did not impact her respiratory system or cardiovascular system, and that there was little other evidence relating to Plaintiff's weight. (R. at 20.)

Next, the ALJ found that Plaintiff's ADLs conflicted with her symptom testimony. (R. at 20.) Plaintiff indicated she could generally care for her dogs, care for her personal hygiene and grooming, prepare meals, perform chores around the house, run errands, drive, manage her finances, read, do crafts, watch television, and attend church. (R. at 20, 282–91.) Plaintiff also cycles daily for physical activity. (R. at 20, 643, 819–909.

Plaintiff first argues that the ALJ's analysis of Plaintiff's medical evidence and how it conflicts with the symptom testimony does not provide a discussion of what symptom testimony the ALJ is referring to that conflicts. (Pl. Br. at 18; R. at 19–20.) The medical imaging, as well as the medical evidence do not support Plaintiff's allegations of disabling symptoms. (R. at 416, 623.) But Plaintiff's ADLs show that she was capable of doing more than she alleged.

Plaintiff also contends the ALJ erred in rejecting her symptom testimony because Plaintiff did not want surgical intervention. (Pl. Br. at 19; R. at 19.) But Plaintiff did see an orthopedist and continued to complain of pain in her ankle and still did not want surgical intervention. (R. at 19–20, 923, 928.) The ALJ did not err in relying on Plaintiff denying treatment as evidence to reject Plaintiff's symptom testimony.

Plaintiff argues that though the ALJ found her pain improved with physical therapy, manipulation, and myofascial release, the record shows that physical therapy only improved some of her symptoms. (Pl. Br. at 19–20; R. at 19, 640, 652, 905.) But the record shows that regardless, physical therapy, home exercise program, manipulation myofascial release, icing, and topical analgesics improved Plaintiff's pain. (R. at 819, 830, 834–35, 847, 858, 916.)

Finally, Plaintiff argues the ALJ did not provide a thorough analysis of how Plaintiff's ADLs conflicted with her symptom testimony by merely listing off the activities Plaintiff can do. (Pl. Br. at 21–22; R. at 282–87, 643, 819, 871, 885, 887, 890, 895, 900, 905.) Plaintiff also describes that she could only grocery shop for short trips, and she had increased pain and stiffness. (Pl. Br. at 22; R. at 42.) Additionally, Plaintiff "used her pedaler for 30 min this morning and had trouble with stiffness after transferring from seated position." (Pl. Br. at 22; R. at 838.) She also describes that when she cooked and cleaned on a Saturday, she felt tired, could not move, and she had to nap the next day. (Pl. Br. at 22; R. at 854.) But, as previously stated, the ALJ explained that Plaintiff's ADLs were inconsistent with her allegations of disabling pain. The Court finds the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony.

**IV. CONCLUSION**

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided specific and legitimate reasons supported by substantial evidence in assigning little weight to the medical opinion of Dr. Whitaker, and the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** affirming the June 25, 2019 decision of the Administrative Law Judge (R. at 13–23), as upheld by the Appeals Council on May 5, 2020 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 16th day of September, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge